UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SONIA MCGAFFIGAN,

                              Plaintiff,

      v.

THE CITY OF ROCHESTER, et al.,

                              Defendants.
_____

DECISION & ORDER

21-CV-6545FPG

        Plaintiff Sonia McGaffigan ("McGaffigan") filed this action against the City of Rochester (the "City") and Rochester Police Department ("RPD") Officers Ethan Paszko, Ryan Castrichini, Domenic Borrelli, Jeremy Robinson, and John Doe Police Officers 1-10 (collectively, "defendants"), asserting claims arising out of an incident that occurred during protests that took place in Rochester in September 2020 following the release of video footage depicting a March 2020 encounter between police and Daniel Prude, an unarmed Black man who died during or following the encounter. (Docket # 1). McGaffigan alleges that defendants used excessive force and unlawfully arrested her on September 5, 2020, as she was attempting to comply with an RPD order to leave the protest. (*Id.*). McGaffigan asserts eight causes of action in the complaint: (1) excessive force against the RPD officers, pursuant to 42 U.S.C. § 1983 ("Section 1983"); (2) assault and battery against all defendants, pursuant to New York state law; (3) unlawful seizure and false arrest against the RPD officers, pursuant to Section 1983; (4) unlawful seizure and false arrest against all defendants except Robinson, pursuant to New York state law; (5) evidence fabrication and denial of fair trial against the RPD officers, pursuant

to Section 1983; (6) First Amendment infringement and retaliation against all defendants, pursuant to Section 1983; (7) failure to intervene against the RPD officers, pursuant to Section 1983; and, (8) conversion and trespass to chattels against all defendants, pursuant to New York state law. (*Id.*).

Currently pending is McGaffigan's motion to amend her complaint to assert two additional claims pursuant to Section 1983: a claim for *Monell* liability against the City for alleged violations of the First and Fourth[1] Amendments and a claim for malicious prosecution against the RPD officers. (Docket ## 19, 24). Defendants do not oppose addition of the malicious prosecution claim but do oppose McGaffigan's request for leave to assert a *Monell* claim. (Docket # 28). Also pending is McGaffigan's motion to compel. (Docket # 18). For the reasons discussed below, McGaffigan's motion to amend is granted, and her motion to compel is denied without prejudice.

---

[1] Defendants oppose McGaffigan's motion to the extent it seeks to assert a *Monell* claim for violations of her Fourteenth Amendment rights. (Docket # 28 at 12). McGaffigan's responsive submission did not directly address this argument, nor did it articulate the basis of any Fourteenth Amendment *Monell* claim. (Docket # 30). During oral argument on the motion, in response to questioning from the Court concerning the basis for any such claim, counsel for McGaffigan responded that the Fourteenth Amendment *Monell* claim was grounded in the alleged unequal treatment of plaintiff by the City due to its aversion to the protesters' message compared with the treatment of other protesters whose message the City supports. The proposed amended complaint, however, does not contain any allegations concerning other protests during which protesters were treated more favorably. Even assuming such allegations would be sufficient to state a *Monell* claim grounded in the Fourteenth Amendment – a conclusion I need not address – those allegations are not pled by McGaffigan. Accordingly, I do not interpret the proposed amended complaint as asserting an independent Fourteenth Amendment *Monell* claim. This conclusion is consistent with the district court's interpretation of similar complaints in other cases pending in this district. *See*, *e.g.*, *Sorokti v. City of Rochester*, 2022 WL 2356757, *3 at n.2 (W.D.N.Y. 2022) ("[t]he Court does not read [p]laintiff's Amended Complaint to raise an independent claim arising under the Fourteenth Amendment[;] [r]ather, plaintiff cites the Fourteenth Amendment in accordance with the well-established rule that the Fourteenth Amendment is the vehicle through which the First and Fourth Amendments apply against the states").

## FACTUAL BACKGROUND

The facts of this case arise from the release to the public on September 2, 2020, of RPD body camera footage depicting the encounter between police and Daniel Prude in March 2020. (Docket # 1 at ¶¶ 13-14). According to the complaint, following the release of that footage, protests occurred in downtown Rochester from September 2, 2020, through September 5, 2020, and plaintiff, a University of Rochester student, attended the protests on her bicycle on September 5th. (*Id.* at ¶¶ 1, 14-16). At approximately 11:53 p.m. that night, plaintiff began to ride her bike back to campus to "comply with police orders to disperse and go home." (*Id.* at ¶ 17). As plaintiff was doing so, Officer Robinson "suddenly rushed at her, without warning, and shoved her in the chest, throwing her off her bicycle to the ground" near the intersection of State Street and Main Street (near the Holiday Inn). (*Id.* at ¶ 18). Plaintiff alleges that the City and Officer Robinson "failed to preserve his body worn camera recording" of this incident. (*Id.* at ¶ 21). Officers Paszko, Castrichini, and Borrelli then "jumped on top of [plaintiff] and used their full body weight to hold her to the ground," "proceeded to strike [plaintiff] with their hands and batons," "pepper sprayed [plaintiff] in the face," and "handcuffed and arrested [plaintiff]." (*Id.* at ¶¶ 23-26).

After the arrest, plaintiff was transported in an RPD vehicle to the Public Safety Building where she was detained "for several hours." (*Id.* at ¶¶ 34-35). Plaintiff alleges that defendants "fabricated their account of their interaction with [her] to falsely charge her with 'unlawful assembly,'" in violation of New York Penal Law § 240.10, a charge which was eventually "dismissed in [its] entirety on or about May 4, 2021." (*Id.* at ¶¶ 36, 37). Plaintiff also alleges that she requested that the officers "retrieve her bicycle, but they refused," which ultimately resulted in the bike being lost or stolen. (*Id.* at ¶¶ 33, 39).

## ANALYSIS

**I.     The Parties' Contentions**

Plaintiff seeks to add a claim against the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for defendants' violations of plaintiff's First and Fourth Amendment rights. (*See* Docket # 24-1 at ¶¶ 92-93, 117-52). In general, this claim involves allegations that the City and RPD developed an "affirmative municipal policy," *i.e.*, the "protest response plan," in anticipation of the release of the Daniel Prude body camera footage, which was designed to unlawfully suppress the ensuing Black Lives Matter protests, and which ultimately led to plaintiff's (and others') injuries on September 5, 2020. (Docket # 19-16 at 5-8). Plaintiff also alleges that *Monell* liability is appropriate because the City and RPD failed to train and supervise RPD officers regarding how to properly police peaceful protests. (*Id.* at 8-9).

In addition, plaintiff seeks to add a Section 1983 claim for malicious prosecution against defendants based on the state court criminal charges (unlawful assembly) that she faced following her arrest on September 5, 2020. (Docket # 24-1 at ¶¶ 37-38, 108-16). Plaintiff alleges that she accepted an adjournment in contemplation of dismissal to resolve these charges and the charges were dismissed on May 4, 2021. (*Id.* at ¶¶ 37-38). Because these charges did not end with a conviction, she argues (and defendants do not disagree) that she may now pursue a malicious prosecution claim in light of the Supreme Court's recent decision in *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022). (Docket ## 24; 28 at 5 n.1). The Court in *Thompson* held that "a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence" – which previously had been the law in the Second Circuit under *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018) – and that "[a] plaintiff need only show that the

criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. at 1336, 1341. (*See* Docket # 24).

With respect to the malicious prosecution claim, defendants have stated that they "cannot in good faith oppose an amendment to add the malicious prosecution claim due to the U.S. Supreme Court's recent change in law." (Docket # 28 at 5 n.1). Given the absence of opposition, and consideration of the *Thompson* decision, I find that McGaffigan should be permitted to amend her complaint to assert this claim.

Regarding the proposed *Monell* claim, defendants maintain that leave to amend should be denied on the grounds of futility. (Docket # 28 at 5-12). According to defendants, McGaffigan has failed to adequately allege a municipal policy, custom, or failure of training sufficient to hold the City liable for any alleged constitutional violation. (*Id.* at 5-9). Even if she had adequately alleged a municipal custom or policy, defendants maintain, McGaffigan has failed to adequately allege any underlying First Amendment claim to support a *Monell* claim based upon this constitutional provision. (*Id.* at 9-10, 12). Defendants also maintain that plaintiff is seeking to add the *Monell* claim after undue delay and in bad faith and that the amendment prejudices defendants and burdens judicial resources. (*Id.* at 13-19).

II.     **Applicable Law**

Rule 15(a) of the Federal Rules of Civil Procedure provides that once the time for amending a pleading as of right has expired, a party may request leave of the court to amend, which shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its

5

merits. *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). While the court retains discretion to grant or deny leave to amend under Rule 15(a), "[the] outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.* at 182; *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46 (2d Cir. 1983).

Despite the ordinarily lenient standard imposed, if the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d at 131. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). Rule 8(a) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to give the defendant fair notice of the claim plaintiff is asserting and the factual basis for the claim. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). To avoid dismissal, the proposed amended claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The Supreme Court has made clear that 'a municipality cannot be made liable' under § 1983 for acts of its employees 'by application of the doctrine of *respondeat superior*.'" *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)), *cert. denied*, 558 U.S. 933 (2009). "In order to maintain a § 1983 action against a municipal defendant, a plaintiff must identify a municipal 'policy or custom' from which the alleged injury arose." *Warr v. Liberatore*, 270 F. Supp. 3d 637, 651 (W.D.N.Y. 2017) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)), *reconsideration denied*, 2018 WL 3237733 (W.D.N.Y. 2018); *see also Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) ("[t]o hold a [municipality] liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right") (citation omitted).  A plaintiff may satisfy the "official policy or custom" requirement by alleging any of the following: "(1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff." *Gazzola v. Cnty. of Nassau*, 2022 WL 2274710, *12 (E.D.N.Y. 2022) (quoting *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 636 (E.D.N.Y. 2017) (citing Second Circuit decisions)).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301-02 (S.D.N.Y. 2015) (brackets, citations, and quotations omitted). "Thus, to survive a motion to dismiss, [p]laintiffs cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Id.* (quotations omitted).

### III.  Analysis

McGaffigan's proposed *Monell* claim against the City alleges that the City created and implemented a "protest response plan" based upon their knowledge that "large-scale protests" "focused directly on police misconduct and racism" would result from the eventual release of body-worn camera footage involving the death of Daniel Prude. (Docket # 24-1 at ¶¶ 119, 123, 125, 128). According to McGaffigan, the implementation of the City's protest response plan resulted in the targeting of "peaceful protesters" based upon an objection to their message and employed "extreme violence" through use of military tactics and chemical weapons to quash the protests. (*Id.* at ¶¶ 128-31).

Identifying at least three previous protests, McGaffigan alleges that the City has used excessive force in response to peaceful protesters in the past, thus establishing a City custom of utilizing excessive force, and that the City was aware of and failed correct its protest response policy and training deficiencies. (*Id.* at ¶¶ 145-46). McGaffigan also alleges that the City's Mobile Field Force ("MFF") – a "specially trained and equipped team providing a rapid, organized and disciplined response to civil disorder and crowd control" – was tasked by the City

to respond to the 2020 protests and that they were improperly trained to implement military tactics and chemical weapons designed to respond to "large-scale civil disorders such as riots" against otherwise peaceful protests and demonstrations, resulting in the disproportionate use of force against peaceful protesters. (*Id.* at ¶¶ 136-41). Such allegations, which must be assumed true for purposes of this motion, are sufficient to adequately allege a municipal liability claim against the City at this stage. *See Sorokti v. City of Rochester*, 2022 WL 2356757, *3 (W.D.N.Y. 2022) (denying motion to dismiss *Monell* claim based upon similar allegations); *Lynch v. City of Rochester*, 2022 WL 2356704, *3-4 (W.D.N.Y. 2022) (same); *Hilderbrant v. City of Rochester*, 2022 WL 2356701, *3-4 (W.D.N.Y. 2022) (same); *Flannery v. City of Rochester*, 2022 WL 2356635, *3-4 (W.D.N.Y. 2022) (same); *Barnhart v. City of Rochester*, 2022 WL 2356631, *9-10 (W.D.N.Y. 2022) (same); *see also Maring v. City of Rochester*, 2022 WL 2356721, *11-12 (W.D.N.Y. 2022) (concluding that similar allegations were adequate to plead *Monell* claims against the City); *Boehner v. City of Rochester*, 2022 WL 2356632, *7-8 (W.D.N.Y. 2022) (same).

I also reject defendants' contention that McGaffigan has failed to sufficiently allege a policy or custom relating to alleged violations of her First Amendment rights. As an initial matter, the fact that McGaffigan was attempting to comply with a dispersal order at the moment of her arrest does not preclude her from asserting a First Amendment *Monell* claim. *See Shorr v. City of Rochester*, 2022 WL 2356755, *3 (W.D.N.Y. 2022) (rejecting contention that plaintiff had failed to allege First Amendment claim because he asserted "that he was holding an umbrella and not moving pursuant to a lawful order as officers advanced"[;] . . . [t]he Court is unclear how holding an umbrella bears on whether [p]laintiff was engaging in protected activity"). In any event, the gravamen of McGaffigan's *Monell* claim is that the City's response

to the protests was based on its objection to the protesters' message. *See Sorokti*, 2022 WL 2356757 at *3 ("the City's argument that [p]laintiff has not pled any underlying First or Fourth Amendment constitutional violations is without merit[;] . . . . [p]laintiff has pled adequate First and Fourth Amendment violations: that the City's response to the protests was based on its objection to the message the protesters were expressing, and that the City's actions or inactions led to excessive force being used against protesters"); *Lynch v. City of Rochester*, 2022 WL 2356704 at *3 (same); *Hilderbrant v. City of Rochester*, 2022 WL 2356701 at *3 (same); *Flannery v. City of Rochester*, 2022 WL 2356635 at *3 (same); *Barnhart v. City of Rochester*, 2022 WL 2356631 at*9 (same).

      I have considered the City's remaining arguments against permitting amendment, including undue delay, inefficiency, and bad faith, and find that they do not compel denial of the motion. Accordingly, I conclude that McGaffigan should be permitted to amend her complaint to assert a *Monell* claim against the City in connection with the alleged violations of her First and Fourth Amendment rights.

      I also deny McGaffigan's pending motion to compel at this time without prejudice to renewal after the parties meet and confer about the discovery disputes in light of my determination on the motion to amend.

**CONCLUSION**

For the foregoing reasons, McGaffigan's motion to amend **(Docket ## 19, 24)** is **GRANTED**, and her motion to compel **(Docket # 18)** is **DENIED without prejudice to renewal**. Within fourteen (14) days of the date of this decision, McGaffigan shall file and serve her amended complaint.

**IT IS SO ORDERED.**

<em>s/Marian W. Payson</em><br>
MARIAN W. PAYSON<br>
United States Magistrate Judge

Dated: Rochester, New York
       July 19, 2022