UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SONIA McGAFFIGAN,

                                                Plaintiff,

                                                                                               Case # 21-CV-6545-FPG

v.

                                                                                               DECISION & ORDER

THE CITY OF ROCHESTER, *et al.*,

                                              Defendants.
_____

## INTRODUCTION

On August 4, 2022, Plaintiff Sonia McGaffigan accepted a Rule 68 Offer of Judgment submitted by Defendants City of Rochester "and all of its named and unnamed employees." ECF No. 42 at 2. The accepted offer directs that judgment be entered against Defendants in the amount of $10,001 "plus costs, including reasonable attorney's fees." *Id.* On October 4, 2022, Plaintiff moved for an award of attorney's fees and costs totaling $72,330.80. ECF No. 44. Defendants object to the requested attorney's fees.[1] ECF Nos. 46, 52. For the reasons that follow, Plaintiff's motion is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

The parties agree that Plaintiff is entitled to an award of reasonable attorney's fees and costs in connection with the accepted offer. *See* ECF No. 46 at 4; ECF No. 44-1 at 5-6. "A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. In the Second Circuit, attorney's fees awards are calculated based on the 'presumptively reasonable fee' approach." *Ekukpe v. Santiago*, No. 16-CV-5412,

---

[1] Defendants do not oppose Plaintiff's requests for costs. *See* ECF No. 46 at 20.

1

2020 WL 7027613, at *1 (S.D.N.Y. Nov. 30, 2020) (internal citation and brackets omitted). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also id.* at 167 (noting that adjustments to the lodestar are only appropriate in "rare circumstances" where it does "not adequately take into account a factor that may properly be considered in determining a reasonable fee"). "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Ekukpe*, 2020 WL 7027613, at *1.

## DISCUSSION

Plaintiff requests $71,665 in attorney's fees.[2] Defendants object to the request on several grounds. The Court examines and resolves those objections below.

### I. Reasonable Hourly Rate

The Court first determines the reasonable hourly rate. Plaintiff uses an hourly rate of $550 for Attorney Shields, $900 for Attorney Roth, and $600 for Attorney Thompson. *See* ECF No. 44-2 at 27. The rates for the former two attorneys—whose office is based in Manhattan—constitute out-of-district rates. *See* ECF No. 44-1 at 11; ECF No. 44-13 at 7. Defendants argue that no out-of-district rate should be permitted and that Plaintiff's attorneys should instead receive a rate of between $200 per hour and $300 per hour.[3] *See* ECF No. 46 at 8-14.

The Court agrees that it is inappropriate to use out-of-district rates for Attorneys Roth and Shields. "The reasonable hourly rate is the rate a paying client would be willing to pay," keeping

---

[2] This figure consists of $55,075 in fees for Attorney Elliot D. Shields (rate of $550 per hour (and $160 per hour for clerical work)); $10,590 in fees for Attorney David A. Roth (rate of $900 per hour); and $6,000 for Attorney Donald M. Thompson (rate of $600 per hour).

[3] Defendants also contend that Attorney Thompson's fees should be entirely rejected because Plaintiff failed to include his time records in her original motion papers. *See* ECF No. 52 at 2-4. This minor, harmless, and now rectified oversight does not merit such relief. *See* ECF No. 47-8.

2

in mind "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). "In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors." *Chaparro v. John Varvatos Enters., Inc.*, No. 21-446, 2021 WL 5121140, at *1 (2d Cir. Nov. 4, 2021) (summary order).[4] "[A] reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally." *Arbor Hill*, 522 F.3d at 191. "This presumption may be rebutted—albeit only in the unusual case—if the party wishing the district court to use a higher rate demonstrates that his or her retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." *Id.*

In *Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009), the Second Circuit expanded upon the standard for applying a higher out-of-district rate:

> [W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule. In order to overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors. Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise. . . . The party seeking the award must make a particularized showing, not only that the selection

---

[4] The *Johnson* factors are:

> [(1)] the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Chaparro*, 2021 WL 5121140, at *1 n.2.

> of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result. . . .  Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009) (internal citation omitted).

In her briefing, Plaintiff offers a twofold rationale for retaining attorneys from Manhattan: (1) there were no Rochester attorneys who were both competent and willing enough to take the case, and (2) Plaintiff's retained attorneys were uniquely qualified to handle the matter.[5]

Regarding the first prong, Plaintiff has submitted affidavits from her three attorneys, as well as an unaffiliated Rochester attorney, all of whom attest that there was no competent attorney in Rochester willing to represent Plaintiff—who had "suffered serious civil rights violations[] but only minor physical injuries and a short detention."  ECF No. 44-2 at 18 (affirmation of Attorney Shields); *see also See* ECF No. 47-13 at 2 (affirmation of Charles F. Burkwit);  ECF No. 44-15 at 2-3 (declaration of Attorney Thompson); ECF No. 44-13 at 2, 4 (declaration of Attorney Roth). Even if the Court were to accept this claim without further scrutiny, however, it only proves that imposition of an average *Rochester* hourly rate may not be reasonable under the circumstances; it in no way proves that an average *Manhattan* hourly rate is reasonable.

Because "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively," *Arbor Hill*, 522 F.3d at 190, a court will ordinarily presume that a paying client who cannot find a competent attorney in her own city will make an effort to find one in a

---

[5] Plaintiff did not herself file an affidavit disclosing her rationale for retaining the attorneys that she did.  Though the better practice would have been to submit an affidavit from Plaintiff, the Court presumes that counsel, in their sworn declarations, have proffered Plaintiff's true reasons for retaining them.  If Plaintiff had selected counsel on some other basis—for example, because of counsel's "name recognition"—the Court's analysis may well be different.  *See Simmons*, 575 F.3d at 176 (noting that an out-of-district rate is not warranted if the litigant selected counsel due to his "prestige" or "brand name," since "[l]awyers can achieve prestige and fame in numerous ways that do not necessarily translate into better results").

4

nearby, less costly metro area. *See, e.g.*, *id.* at 185 (concluding that a reasonable, paying client located in Albany "would have made a greater effort to retain an attorney practicing in the Northern District of New York, whether in Syracuse, Binghamton, Utica, or Kingston, than did plaintiffs," who retained attorneys practicing in the Southern District of New York); *Da Silva v. Bennet St. Dev. Corp.*, No. 05-CV-2989, 2010 WL 11651766, at *14 (E.D.N.Y. Sept. 24, 2010) ("This Court is not persuaded that reasonable paying clients who like plaintiffs, seek to recover unpaid wages under the federal and state labor laws, would not have spent the extra time to look for less expensive local counsel either in Brooklyn or elsewhere in the Eastern District[, rather than in the Southern District]."). Conversely, a court will not ordinarily presume that a client, if unable to find counsel in the immediate vicinity, will disregard all price concerns and select counsel from a geographically more distant, "significantly more expensive" city. ECF No. 44-13 at 7; *see also Davis v. Eastman Kodak*, 758 F. Supp. 2d 190, 200 (W.D.N.Y. 2010) (rejecting the notion that "once the forum rule presumption has been rebutted, the Court must blindly endorse any and all 'customary billing rates' utilized by the out-of-district law firms prosecuting [an action] as those a reasonable client would be willing to pay").

In this case, there is no evidence that Plaintiff would have been unable to find competent counsel located in other parts of the Western District—in particular, Buffalo—or in one of the many metro areas located in the Northern District, including Syracuse, Binghamton, or Albany. Indeed, there is no evidence that Plaintiff even attempted that search. As compared to Manhattan, all of those cities are geographically closer to Rochester and less expensive. By contrast, the firm of Roth & Roth, LLP pays "expensive" rent on a "suite of offices" in midtown Manhattan, and carries "significantly more" expenses due to its location—"from payroll, NYC taxes to rent." ECF No. 44-13 at 7. Attorney Roth concedes that his firm charges a "significantly higher" hourly rate

5

than "Rochester attorneys." *Id.* at 8.  Given the admittedly large premium required to retain a Manhattan law firm over other attorneys in the Western or Northern Districts, and as well as the absence of evidence that Plaintiff would have been unable to obtain competent counsel in either of those districts, the Court concludes that the rates charged by Plaintiff's Manhattan attorneys "would simply have been too high for a thrifty, hypothetical client—at least in comparison to the rates charged by local attorneys." *Arbor Hill*, 522 F.3d at 185.

This conclusion is all the more reasonable given the potential non-monetary benefits redounding to Plaintiff's counsel from their representation of Plaintiff.  *See id.* at 190 (noting that a district court should consider how a reasonable client might be able to negotiate a lower hourly rate if her attorneys "desire to obtain the reputational benefits that might accrue from being associated with the case").  Attorney Roth indicates that, although his firm "do[es] no advertising in Rochester" and obtains cases only from "word-of-mouth referrals," his firm has litigated "dozens of police misconduct cases against the City of Rochester" since 2016.  ECF No. 44-13 at 2.  Recently, Plaintiffs' attorneys represented several family members of Daniel Prude in a FOIL action.  Once they obtained the recordings of Daniel Prude's death, Plaintiffs' attorneys "coordinated with local activists and media outlets to publicly release the video," which led to "unprecedented reforms in the RPD and at City Hall."  ECF No. 44-2 at 15-16.  Now, Plaintiffs' attorneys are "counsel for over 117 plaintiffs" in civil rights cases arising from the "2020 [Daniel Prude] protests in Rochester."  *Id.* at 17.

The attorney declarations show that Plaintiffs' attorneys have developed a positive reputation as civil rights attorneys who are invested in the community and who can competently and successfully challenge police and governmental misconduct.  They obtain new clients through their community connections and client base via referral.  *See* ECF No. 44-13 at 2.  The Daniel

6

Prude case, the 2020 protests arising after his death, and the litigation resulting therefrom, are all very high-profile matters, and the representation of over one hundred individuals—including many, like Plaintiff, who allege significant civil rights violations but only minor physical harm—not only bolsters the reputation and name recognition of Plaintiffs' counsel in Rochester, but operates as an inexpensive and effective form of marketing to other potential clients.[6] It is in just such a circumstance that a reasonable, paying client might be able to insist upon a lower hourly rate "than the law firm's customary billing rates." *Arbor Hill*, 522 F.3d at 194.

Turning to the second prong of Plaintiff's argument, Plaintiff asserts that a reasonable, paying client would opt to retain Attorneys Roth and Shields, despite the additional expense, because they have "sufficient experience to navigate the highly complicated fields of excessive force cases involving serious civil rights violations, but only a short detention and minor physical injuries, and *Monell* claims." ECF No. 44-1 at 16. Although out-of-district counsel may be appropriate if counsel's expertise would likely "produce a substantially better net result," *Simmons*, 575 F.3d at 175, this is not such a case.

Contrary to Plaintiff's argument, this case was straightforward. Plaintiff alleges that RPD officers, without provocation, subjected her to excessive force, falsely arrested her, and fabricated their accounts of the events. In this alleged factual context, the standards for substantive liability and qualified immunity are clear and well-established. While a *Monell* claim can arguably complicate even a straightforward excessive-force case, Plaintiff's *Monell* claim was not a significant factor in this litigation: it was added just one day before Defendants submitted their

---

[6] Plaintiff's case may not, standing alone, be high profile, but it is part of the class of cases arising from the 2020 protests, which certainly is.

offer of judgment.[7]  Accordingly, the special expertise and qualifications of Plaintiffs' attorneys—whether in civil rights matters generally or *Monell* claims specifically—is not a salient ground for permitting an out-of-district rate.  *See Simmons*, 575 F.3d at 176 (noting that an attorney's "special expertise in litigating [a] particular type of case" is only relevant for purposes of permitting an out-of-district hourly rate "if the case is of such nature as to benefit from special expertise").  Moreover, even if the Court were to accept that this case involved "complex" issues requiring counsel with special expertise, as discussed above, Plaintiff fails to provide evidence that a similarly qualified attorney could not be located elsewhere in the Western or Northern District.  *See Arbor Hill*, 522 F.3d at 185.

For these reasons, the Court declines to use Attorney Shields's and Attorney Roth's out-of-district hourly rates in calculating the lodestar.

The Court must now determine the reasonable hourly rate.  Defendants suggest that a rate of "between $250-$300 for partners and $200-$250/hour for associates would be considered reasonable in the Western District," and they cite case law to support those figures.  ECF No. 46 at 8.  After considering the *Johnson* factors, the Court concludes that higher rates are warranted.

Courts in the Western District have found a wide range of hourly rates reasonable.  There is case law to support a top-end of $300 per hour for experienced litigators.  For example, in 2022, Magistrate Judge Payson found reasonable an hourly rate of $275 for a Rochester-based civil rights litigator with over twenty-five years of practice.  *See Warr v. Liberatore*, No. 13-CV-6508, 2022 WL 969528, at *5 (W.D.N.Y. Mar. 31, 2022) (collecting cases); *see also Figueroa v. KK Sub II, LLC*, No. 15-CV-6526, 2019 WL 1109864, at *10 (W.D.N.Y. Mar. 11, 2019) (in employment-

---

[7] For this reason, Magistrate Judge Pedersen's decision in *Casaccia v. City of Rochester*, 17-CV-6323, 2021 WL 4189707 (W.D.N.Y. Sept. 15, 2021), is distinguishable.  There, Judge Pedersen found Attorney Shields's out-of-district rate reasonable because of "the expertise he projects in doggedly pursuing civil rights claims under *Monell*." *Casaccia*, 2020 WL 4189707, at *4.

discrimination action, stating that "[t]he hourly rates typically awarded in this District" are "$225-$250 for partner time or senior associate time [and] $150-$175 for junior associate time"). On the other hand, a top-end of $500 per hour has also been found reasonable in the Western District. *See New York v. Grand River Enters. Six Nations, Ltd.*, No. 14-CV-910, 2021 WL 4958653, at *4 (W.D.N.Y. Oct. 26, 2021) (in action arising from sale of untaxed cigarettes, finding rate of $500 per hour reasonable for assistant attorney general with "more than 20 years of experience," and rate of $350 reasonable for assistant attorney general with more than ten years of experience); *see also Capax Discovery, Inc. v. AEP RSD Invs., LLC*, No. 17-CV-500, 2023 WL 140528, at *6 (W.D.N.Y. Jan. 10, 2023) ("In the Western District, $400-$500 per hour is generally deemed a reasonable hourly rate for experienced trial counsel. . . . For experienced associates, a reasonable hourly rate is $350."). In the Northern District, a top-end of $350 per hour appears to be the norm for civil rights attorneys with extensive experience. *See Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 202 (N.D.N.Y. 2019) (in excessive force case, finding rate of $350 per hour appropriate for attorney with forty years of experience and 100 jury trials, and rate of $250 appropriate for "senior" attorney with more than ten years of experience and 15 jury trials).

Attorney Roth has thirty years of litigation experience, has represented thousands of plaintiffs in personal injury, civil rights, and employment cases, and handles "extremely complex cases involving municipal negligence, transit liability and civil rights violations." ECF No. 44-13 at 6; *see also id.* at 3-4. Attorney Shields has been practicing law for just over one decade, focusing on police misconduct and civil rights litigation. ECF No. 44-2 at 10-11. He has been involved in more than one-hundred civil rights cases since 2012. *Id.* at 11. Plaintiff has provided evidence that Attorney Shields has a positive reputation within Rochester's legal community for his representation of civil rights clients. *See* ECF No. 47-13 at 2; *Casaccia*, 2021 WL 4189707, at *4.

9

Attorney Thompson primarily focuses his practice on criminal defense, in which he has over 35 years of experience, but he also represents plaintiffs in civil rights litigation. ECF No. 44-15 at 1-2.

The Court concludes that $350 per hour is reasonable for all three of Plaintiff's attorneys, notwithstanding their differences in experience. Although higher and lower rates have been awarded within the Western District, the Court finds that $350 per hour is appropriate for an experienced trial attorney in the area of civil-rights litigation. *See Costa v. Sears Home Improvement Prods., Inc.*, 212 F. Supp. 3d 412, 420 n.5 (W.D.N.Y. 2016) (noting that the "most relevant authority" for determining reasonable hourly rates are other cases dealing with the same subject matter). As their declarations demonstrate, all three of Plaintiff's attorneys bring a wealth of skill, knowledge, and specialization that is invaluable to their civil-rights clients, and their willingness to litigate an important civil-rights matter (that did not involve serious injury) is laudable. A higher rate could be justified for Attorneys Roth and Thompson because of their experience, but they played a more limited, less demanding role in this litigation—providing strategic and other advice to Attorney Shields. ECF No. 44-1 at 8; ECF No. 44-13 at 4; *see also Chaparro*, 2021 WL 5121140, at *1 n.2 (stating that, in deciding the reasonable hourly rate, a court may consider the "the novelty and difficulty of the questions" and "the level of skill required to perform the legal service properly"). Conversely, Attorney Shields is entitled to the same rate as his more experienced co-counsel because of his central role in representing Plaintiff, along with the particular skills he brings to such cases. *Cf. Casaccia*, 2021 WL 4189707, at *4.

Accordingly, the Court concludes that a reasonable hourly rate for all three of Plaintiff's attorneys is $350 per hour.[8]

---

[8] For the same reasons, the Court will reduce the hourly rate at which Attorney Shields billed for clerical work—from $160 per hour to $75 per hour. *See* ECF No. 44-3 at 4; *Figueroa*, 2019 WL 1109864, at *10.

10

## II. Reasonable Hours Worked

Defendants argue that the Court should reduce the number of hours on several grounds.[9] The Court will examine each below.

### a. Hours Billed after July 25, 2022

The accepted offer of judgment provides for "costs, including reasonable attorney's fees, accrued in the prosecution of Plaintiff's federal claims, *up to and including the date of this offer*." ECF No. 42 at 2 (emphasis added). Based on the emphasized language, Defendants argue that the Court "must exclude from any award . . . any and all work performed after the date of the Offer of Judgment," *i.e.*, July 25, 2022. ECF No. 46 at 5. The Court agrees.

"Like a typical settlement agreement, an accepted Rule 68 offer of judgment is a contract, and it must be interpreted according to ordinary contract principles." *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019). "[I]f the terms of a contract are clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Id.* Where, as here, the accepted Rule 68 offer "unambiguously states that the recoverable attorney's fees, expenses, and costs are limited to those incurred by the date of the offer," fees and costs incurred after that date "cannot be recovered," and the district court "ha[s] no authority to award them." *Id.*

Plaintiff does not dispute the operation of the plain language of the accepted offer; instead, she asserts that Defendants negotiated the dispute over attorney's fees "in bad faith," which

---

[9] In passing, Defendants note that prevailing parties cannot be "compensated for work on state law claims." ECF No. 46 at 6. Based on that premise, Defendants appear to request a percentage reduction based on the number of claims eligible for a fee award. *See id.* at 19. Defendants do not undertake a proper analysis of this issue. It is true that "the number of hours spent on a case should include only those hours spent on claims eligible for fee-shifting," but the Second Circuit has held that "[h]ours spent on legal work that furthers both fee-shifting and non-fee-shifting claims may be included in the lodestar calculation because they would have been expended even if the plaintiff had not included non-fee-shifting claims in his complaint." *Millea*, 658 F.3d at 168 & n.4. Absent any developed argument that Plaintiff's attorneys billed for work *only* relevant to non-compensable claims, the Court declines to reduce Plaintiff's fee request on that basis.

justifies an award of fees and costs incurred after the date of the offer regardless of the parties' agreement.  ECF No. 47 at 10-11.  In *Lilly*, the Second Circuit declined to consider "whether a district court may, as a matter of equity or otherwise, award fees on fees when a party negotiates in bad faith, despite the presence of a cut-off clause in the Rule 68 offer or settlement agreement." *Lilly*, 934 F.3d at 237 n.93.  Even assuming that the Court has the authority to award fees for "bad faith" negotiations, the negotiations here cannot be characterized as "bad faith."

Plaintiff has submitted documentation to support her claim of bad faith.  Attorney Shields notes that he "attempted to settle the fees in this matter prior to making the instant application." ECF No. 47-1 at 1.  On September 7, 2022, Attorney Shields emailed defense counsel to negotiate the fee award.  ECF No. 47-3 at 1.  He explained that "total billing came out to $37,905," a figure he reached through a "voluntarily reduced" hourly rate and by excluding fees for "filing and other paralegal type work."  *Id.*  Attorney Shields proposed to "settle the fees and costs" for $30,000, which would allow him to avoid "filing a fee application (and the additional fees we could charge in connection with making said application)."  *Id.*  Defense counsel responded with an offer of $11,000.  ECF No. 47-5 at 1.  Attorney Shields avers that he did not reply to this offer "because doing so would have been futile."  ECF No. 47-1 at 2.

The Court fails to see how this interaction evinces defense counsel's bad faith.  The parties simply failed to come to agree on a fee award.

Plaintiff also suggests that Defendants have raised "bad faith arguments" in opposition to her fee motion. *See* ECF No. 47 at 11.  As discussed herein, the Court finds Defendants' arguments either meritorious or, at the very least, nonfrivolous, so the Court declines to find that Defendants' opposition to the fee motion is a bad-faith act warranting an additional fee award.

Accordingly, in light of the plain language of the accepted Rule 68 offer, Plaintiff is only entitled to fees and costs that accrued "up to and including the date of th[e] offer," *i.e.*, July 25, 2022. ECF No. 42 at 2; *see also Lilly*, 934 F.3d at 237 ("[W]hen a settlement cuts off a plaintiff's entitlement to attorney's fees on a specific date, a district court may not award a party attorney's fees for work incurred after that cut-off date."). 27.9 hours are excluded from Attorney Shields's hours, ECF No. 44-3 at 20-22; 6.7 hours are excluded from Attorney Roth's hours, ECF No. 44-14 at 2; and 4.2 hours are excluded from Attorney Thompson's hours, ECF No. 47-8 at 1.

### b. Hours Billed for Motions to Amend and to Compel

Before this matter settled, Plaintiff brought a motion to compel Defendants to respond to certain discovery, which Defendants opposed in part because some of Plaintiff's requests concerned the City of Rochester's protest response, and Plaintiff had failed to bring any claim "for municipal liability." ECF No. 29 at 7. To circumvent this objection, Plaintiff moved to amend the complaint to add a *Monell* claim against the City. *See* ECF No. 19-16 at 3-4. The parties were able to resolve some of their discovery disputes before the resolution of the motions. *See* ECF Nos. 33, 34. Then, on July 19, 2022, Magistrate Judge Payson granted Plaintiff's motion to amend and denied without prejudice the motion to compel, stating that Plaintiff could renew her motion "after the parties meet and confer about the discovery disputes in light of [the] determination on the motion to amend." ECF No. 38 at 10. Less than one week later, Defendants submitted their Rule 68 offer. *See* ECF No. 42 at 2.

Defendants now contend that hours expended on Plaintiff's motions to amend and compel should be excluded. ECF No. 46 at 14-17. They assert that the litigation over those issues "could have been avoided had Plaintiff's counsel included a *Monell* claim at the outset." *Id.* at 14.

13

"The fee applicant [] bears the burden of documenting the hours spent by counsel, and the reasonableness thereof. In determining a reasonable fee, the district court should exclude hours that were not reasonably expended, including hours that are excessive, redundant, or otherwise unnecessary." *Brooks v. Roberts*, 501 F. Supp. 3d 103, 114 (N.D.N.Y. 2020) (internal citation, quotation marks, and ellipsis omitted). "The relevant inquiry for the court is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id.* (internal quotation marks omitted).

Applying these standards, the Court is not persuaded by Defendants' argument. While it may be reasonable to expect Plaintiff's attorneys to draft the complaint with an eye towards the scope of future discovery, the Court cannot say it was necessary for Plaintiff's counsel to predict Defendants' potential objections to future discovery requests and proceed to draft the complaint in order to pre-emptively thwart those objections. Judging an attorney's conduct on that standard would be too affected by hindsight bias. *See id.* Ultimately, what occurred in this case was an entirely ordinary dispute over the scope of Plaintiff's claims and permissible discovery. Plaintiff's decision to seek relief by motion was neither redundant nor unnecessary, and the Court declines to exclude such hours from the lodestar.

    c.    "Trimming the Fat"

Finally, Defendants argue that Plaintiff's attorneys engaged in the practice of "fatty" billing. They request a "ten percent across-the-board reduction" to Plaintiff's fee request. ECF No. 46 at 18; *see also Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) ("[I]n dealing with [] surplusage, the court has discretion simply to deduct a reasonable percentage of the number

of hours claimed as a practical means of trimming fat from a fee application." (internal quotation marks omitted)).

The Court rejects Defendants' objection. Defendants cite only a few, scattered entries in Attorney Shields's twenty-two page billing summary to support their position. *See* ECF No. 46 at 17-18. The Court is not convinced that those few examples constitute sufficient "fat" as to justify an across-the-board reduction.

### III.  Lodestar

The Court now calculates the lodestar. The reasonable hourly rate is $350 per hour for all three of Plaintiff's attorneys, and $75 per hour for clerical work that Attorney Shields performed. Any hours worked after July 25, 2022 are excluded from the reasonable number of hours. The Court calculates the following lodestar amounts for each attorney:

- Attorney Shields: $25,242.50.[10]
- Attorney Roth: $2,555.[11]
- Attorney Thompson: $2,030.[12]
- TOTAL: $29,827.50.

Added to this amount are $665.80 in costs, which Defendants do not contest. The Court concludes that no adjustment is necessary. *See Millea*, 658 F.3d at 167. Accordingly, Plaintiff is entitled to $30,493.30 in fees and costs.

---

[10] 71.8 hours at a rate of $350 per hour is $25,130.  1.5 hours of clerical work at a rate of $75 per hour is $112.50.

[11] 7.3 hours at a rate of $350 per hour is $2,555.

[12] 5.8 hours at a rate of $350 per hour is $2,030.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for attorney's fees and costs (ECF No. 44) is GRANTED IN PART and DENIED IN PART, in that Plaintiff is granted an award of $30,493.30 in fees and costs. The Clerk of Court is directed to amend the judgment to reflect that award.

    IT IS SO ORDERED.

Dated: January 26, 2023
       Rochester, New York

                                        HON. FRANK P. GERACI, JR.
                                        United States District Judge
                                        Western District of New York